PORTER, Price Administrator, v. CLAYTON PACKING CO., Inc.

Miscellaneous No. 1084.

District Court, E. D. New York.

June 1, 1946.

Callman Gottesman, Chief Enforcement Atty., and Harry Pfeffer, Chief Food Enforcement Section, both of New York City, (Kenneth V. Fisher, Regional Litigation Atty., William Sardell, Chief Opinion and Research Branch, and Herman Rapport, all of New York City, of counsel), for Administrator.

Schmalholz & Tick, of New York City, for respondent.

BYERS, District Judge.

Under date of May 2, 1946, the petitioner served a subpoena duces tecum upon the respondent, directing that on May 6th one of the officers of the respondent appear at the Office of Price Administration and bring with him nineteen separate types of office records and "all other data, facts or information used in completing forms DST-55 Revised, and all other books and records required to be kept under Revised Maximum Price Regulation 169, as amended, and Maximum Price Regulation 574, as amended."

The period embraced is stated to be December 31, 1945, to May 2, 1946; and because that subpoena was not obeyed, this court was asked to issue an order directing compliance.

A reading of the subpoena disclosed that, if it were to be literally obeyed, the respondent would have to close its establishment, and transport from its place of business at 320 Johnson Avenue, Brooklyn, in this district, to the Office of Price Administration at 350 Fifth Avenue, in the Borough of Manhattan, all of the foregoing records, probably requiring one or more trucks for that purpose.

The respondent is said by the District Enforcement Attorney, Gottesman, to be "the largest independent cattle slaughterer in the New York Region which comprises the states of New York, New Jersey, Pennsylvania, Maryland, Delaware and District of Columbia."

Obviously the court would have been derelict to have granted an order without requiring a hearing, and therefore the Enforcement Attorney was told to proceed by order to show cause, which was issued on May 13th, returnable on the 15th.

On May 22nd argument was had, pro and con, and the filing of an affidavit in reply to the answering affidavit was directed, so that the court might ascertain how best the interests of both parties could be conserved, in respect of the terms and conditions of an enforcement order.

It requires no citation of authority to demonstrate that the Office of Price Administration cannot perform its functions in this case, unless it is given access to records which will enable it to ascertain whether purchases of live stock have been made at prices above the maximum prescribed by the O.P.A. regulations, and whether there have been sales of meats and meat products by the respondent at overceiling prices. It is not understood that the respondent argued otherwise.

It is represented to the court that the petitioner has conducted an elaborate in-

spection of the respondent's plant and records without disclosing any violation of the law or regulations, and that it is time that the investigation was brought to a close and the respondent permitted to conduct its business free from the restraint of Governmental visitation. That is understandable, but the motion cannot be decided upon such a showing.

It sufficiently appears that the investigation proceeded on April 25, 26, 27 and 29, 1946.

On the first day, 4 accountants; on the second day, 7 accountants, and on the third and fourth days, 2 accountants were in the respondent's plant, examining its records.

On those days, 7 investigators were present on April 25th; 5 on the 26th, 6 on the 27th, and 6 on the 29th.

The supervising investigator states in his affidavit as follows: "In all our operations in the plant we rendered and received courteous treatment as described in Mr. Waller's affidavit." The latter is the head of the Meats, Fats and Oil Section in the Meats, Fats and Oil Branch of the O.P.A.

There seem to emerge two matters in issue according to the affidavit of Thornton, Chief of the Food Price Section:

(1) According to the records of his office, no reports of the slaughtering of bulls have been filed since July, 1945.

For the respondent, the affidavit of Schmalholz, one of the attorneys, contains what purport to be copies of monthly live stock slaughter reports by this respondent for the months of January, February, March and April, 1946, all of which contain that particular item of information.

Apparently those two versions cannot be reconciled.

(2) The petitioner asserts also that what are called "hot weight sheets" are not kept by the respondent. The manager swears that such sheets are kept and have been exhibited as requested, and contain the weight of each animal directly after it has been killed; apparently those sheets contain entries copied from slips of paper, memoranda made contemporaneously with the weighing operation.

While there would be an opportunity for misrepresentation through incorrect entry on the sheets of the figures that appear on the slips, there is no statement that the petitioner has evidence that the respondent has indulged in that practise.

My impression, gained from a study of the papers and the oral argument, is that the petitioner should be afforded a reasonable opportunity to continue the investigation started and said to have been impossible of completion by its accountants, but I see no reason why more than two should be required, nor why any of the books, papers or records should be removed from the respondent's office.

Without deciding that all of the records listed in the subpoena require examination by petitioner in the prosecution of his investigation and the compilation of his report, because of lack of insight into the accounting practices of the enterprise, I think the respondent has more to gain than to lose, by according access to them at reasonable hours and in a reasonably convenient fashion.

I find nothing in the law or regulations which says that the administrator has the right in effect to close down operations of a given plant for the purpose of facilitating any investigation which the law requires him to conduct.

An order may be prepared, providing for the inspection of the said records by two accountants and one assistant at the office of the respondent during customary business hours, without prejudice to the right of the petitioner to seek an amended order, if the one herein directed proves to be inadequate to enable him to perform his functions.