**PORTER v. MURRAY.**

No. 4159.

Circuit Court of Appeals, First Circuit.

June 28, 1946.

Samuel Mermin, of Washington, D. C. (George Moncharsh, Deputy Adm'r for Enforcement, and Milton Klein, Director, Litigation Division, both of Washington, D. C., and William B. Sleigh, Jr., Regional Litigation Atty., of Boston, Mass., and Clinton S. Osgood, District Enforcement Atty., of Manchester, N. H., on the brief), for appellant.

Ernest R. D'Amours, of Manchester, N. H., for appellee.

Before DOBIE, Circuit Judge (by special assignment to this Circuit), MAHONEY, Circuit Judge, and SWEENEY, District Judge.

MAHONEY, District Judge.

This is an appeal by the Administrator of the Office of Price Administration from a judgment of the District Court dismissing his application for enforcement of a subpoena duces tecum issued by a District Director of the Office of Price Administration.

On January 15, 1946, the District Director signed and issued a subpoena duces tecum requiring the defendant who was doing business as the Victory Lumber & Supply Company in Londonderry, New Hampshire, to appear at the District Office of the Office of Price Administration in Concord, New Hampshire, and produce certain books and documents relating to the purchase and sale of lumber, between May 23, 1943 and January 15, 1946. The defendant failed to comply with this subpoena and the Administrator applied to the District Court for enforcement thereof, alleging that de-

SWEENEY, J., dissenting.

fendant had "in his possession certain records of the type described in the subpoena duces tecum relating to the purchase and sale of lumber" and that defendant had "refused to permit the inspection and copying of said records" and "had not furnished the Administrator with a copy of the documents and record referred to in the aforesaid subpoena, nor stipulated with the Administrator as to the information contained therein".

The defendant filed a motion to dismiss the Administrator's application on two grounds: first, because the Act does not authorize the Administrator to delegate his power to issue subpoenas; and, second, because the subpoena in question is so broad and indefinite that enforcement of it would constitute a violation of the Fourth Amendment to the Constitution of the United States. The District Court granted defendant's motion on the first ground above designated.

Under § 202(a) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 922 (a), hereinafter referred to as the Price Control Act, or the Act, the Administrator of the Office of Price Administration, hereinafter called the OPA, "is authorized to make such studies and investigations, to conduct such hearings, and to obtain such information as he deems necessary or proper to assist him in prescribing any * * * regulations, orders, and price schedules thereunder." Section 202 (c), 50 U.S.C.A.Appendix, § 922(c), provides that "The Administrator may by subpena requires any other person to appear and testify or to appear and produce documents, or both, at any designated place" for the purpose of obtaining any information under subsection (a) of § 202. Section 202(e), 50 U.S.C.A.Appendix, § 922(e), of the Act gives the district court "jurisdiction to issue an order requiring such person to appear and give testimony or to appear and produce documents, or both" where any person referred to in § 202(b)[1] or (c) has refused to obey a subpoena served upon him. Section 201(a), 50 U.S.C.A.Appendix, § 921(a), authorizes the administrator to "appoint such employees as he deems necessary in order to carry out his functions and duties" under the Act, subject to the civil service laws. Section 201(b), 50 U.S.C.A.Appendix, § 921 (b), of the Act establishes the principal office of the administrator in the District of Columbia, but provides that "he or any duly authorized representative may exercise any or all of his powers in any place." On May 13, 1944, pursuant to the authority vested in him by § 201(d), 50 U.S. C.A.Appendix, § 921(d), of the Act to "issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions" of this Act, the Administrator promulgated an order delegating his authority to sign and issue subpoenas to the Regional Administrators and the District Directors of the OPA.[2]

---

[1] Emergency Price Control Act.
§ 202(b), 50 U.S.C.A.Appendix, § 922(b). "The Administrator is further authorized, by regulation or order, to require any person who is engaged in the business of dealing with any commodity, or who rents or offers for rent or acts as broker or agent for the rental of any housing accommodations, to furnish any such information under oath or affirmation or otherwise, to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents, the inspection of inventories, and the inspection of defense-area housing accommodations. The Administrator may administer oaths and affirmations and may, whenever necessary, by subpena require any such person to appear and tes-

tify or to appear and produce documents, or both, at any designated place."

[2] Revised General Order 53, 9 F.R. 5191.

"(a) Order delegating authority to sign and issue subpoenas and inspection requirements in rent and price investigations. In connection with any investigation related to the administration or enforcement of the Emergency Price Control Act of 1942, as amended, or any regulation or order issued thereunder, the several Regional Administrators and the several District Directors of the Office of Price Administration are each authorized within their respective regions, or districts to sign and issue: (1) Subpoenas requiring any person to appear and testify or to appear and produce documents, or both, at any designated place; (2) inspection requirements requir-

The principal basis of the determination of the District Court was the decision of the Supreme Court in Cudahy Packing Co. v. Holland, 1942, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895. In that case, the Supreme Court held that the Fair Labor Standards Act of 1938 did not authorize the Administrator of the Wage and Hour Division of the Department of Labor to delegate his power to sign and issue subpoenas duces tecum.[3] The relevant portions of § 4(b) and (c), 29 U.S.C.A. § 204(b) and (c), of the Fair Labor Standards Act contain almost precisely the same language as is found in § 201 (a) and (b) of the Price Control Act.[4] The Court, in the Cudahy case, placed great stress on the Congressional history of the Fair Labor Standards Act. It pointed out that "the authority to delegate the subpoena power was eliminated by the Conference Committee from the bills which each House had adopted. Such authority expressly granted in the bill which passed the Senate, was rejected by the Conference Committee. It also discarded the provisions of the House bill which committed the administration of the Act to the Secretary of Labor, who has a general power of delegation under Rev. Stat. § 161, 5 U.S.C. § 22, 5 U.S.C.A. § 22, and placed in his stead the Administrator, who was given only the subpoena powers of the Federal Trade Commission incorporated in the House bill." 315 U.S. at page 357, 62 S.Ct. 656, 86 L.Ed. 895.[5] The Court concluded that the legislative history of the Fair Labor Standards Act established "that Congress has withheld from him (the Administrator) authority to delegate the exercise of the subpoena power, and that this" precluded its restoration by judicial construction. 315 U.S. at page 367, 62 S.Ct. at page 656, 86 L.Ed. 895. We are not unmindful of the statement of the Supreme Court in the Cudahy case that "Unlimited authority of an administrative officer to delegate the exercise of the subpoena power is not lightly to be inferred.". 315 U.S. at page 363, 62 S.Ct. at page 655, 86 L.Ed. 895. But we feel that the legislative history and the function of Price Control are so different from the legislative history and the function of the Fair Labor Standards Act that the Cudahy case does not control the case at bar.

In construing the Labor Standards Act,

---

ing any person who is engaged in the business of dealing with any commodity, or who rents or offers for rent or acts as a broker or agent for the rental of any housing accommodation, to permit the inspection and copying of records and any other documents and to permit the inspection of inventories or defense-rental area housing accommodations, or both."

3 Lowell Sun Co. v. Fleming, 1 Cir., 1941, 120 F.2d 213, affirmed, 1942, 315 U.S. 784, 62 S.Ct. 793, 86 L.Ed. 1190, decided by this Court and affirmed by the Supreme Court, denied the Administrator of the Fair Labor Standards Act the authority to delegate his subpoena power to a Regional Director. No discussion of this case is necessary since its import is precisely the same as that of the Cudahy case. The decision in the instant case rests on an entirely different legislative history and the two cases are not in conflict.

4 Emergency Price Control Act
§ 201. Administration
(a) " * * * The Administrator may, subject to the civil-service laws, appoint such employees as he deems necessary in order to carry out his functions and duties under this Act * * *. The Administrator may utilize and establish the serv-

ices of Federal, State and local agencies and may utilize and establish such regional, local, or other agencies, and utilize such voluntary and uncompensated services, as may from time to time be needed."
Fair Labor Standards Act of 1938
§ 4. Administrator.
"(b). The Administrator may, subject to the civil-service laws, appoint such employees as he deems necessary to carry out his functions and duties under this chapter * * *. The Administrator may establish and utilize such regional, local, or other agencies, and utilize such voluntary and uncompensated services, as may from time to time be needed."
§ 201(b): "The principal office of the Administrator shall be in the District of Columbia, but he or any duly authorized representative may exercise any or all of his powers in any place. * * *"
Fair Labor Standards Act of 1938.
§ 4(c). "The principal office of the Administrator shall be in the District of Columbia, but he or his duly authorized representative may exercise any or all of his powers in any place."
5 See also Footnote 3, 315 U.S. 357, 362, 363, 62 S.Ct. 651, 86 L.Ed. 895, where the Congressional history is described in detail.

the Supreme Court took note that § 11 of that Act, 29 U.S.C.A. § 211, authorizes the Administrator to delegate his power of investigation to his des'gnated representatives and that a construction granting to the Administrator unrestricted authority to delegate all of his powers "would render meaningless and unnecessary the provisions of § 11 * * *." 315 U.S. at page 361, 62 S.Ct. 653, 86 L.Ed. 895. No provision of the Price Control Act expressly authorizes a delegation of any of the powers of the Administrator to subordinates. The words of the Act vest all powers in the Administrator. Were we to construe the Act to deny any delegation of power by the Administrator, the administration of Price Control would be not only difficult but impossible. The Supreme Court in the Cudahy case said in reference to § 4(c) of the Labor Standards Act, that it could not read the words "any or all" to mean "some". 315 U.S. 357 at page 361, 62 S.Ct. 654, 86 L.Ed. 895. Similarly, we cannot read the words "any or all" in § 201(b) of the Price Control Act to mean "some". We do not believe that Congress intended to require the Administrator to perform personally all the powers vested in him by the Act, and this is borne out by the Congressional history, as shown hereinafter. We cannot say that some of the Administrator's powers can be delegated and others cannot. Nor can we say that the Administrator can delegate his power to conduct investigations or institute enforcement actions, but cannot delegate his power to sign and issue subpoenas.[6]

Not only is there a lack of evidence of Congressional intent to prohibit a delegation of his subpoena power by the Administrator, but there is substantial evidence of Congressional intent to allow such a delegation. In its report on the Price Control bill, the Senate Committee on Banking and Currency stated that § 201 (a) authorizes the Administrator to "perform his duties through such employees or agencies (as he hires or utilizes) by delegating to them any of the powers given to him by the bill," and that § 201(b) "authorizes the Administrator, or any representative or other agency to whom he may delegate any or all of his powers, to exercise such powers in any place." Sen. Rep. No. 931, 77th Cong., 2d Sess. pp. 20, 21. The fact that this is a report of a committee of only one House of Congress does not deprive it of considerable weight. It is true, as the Court below pointed out, that there is no specific mention of the subpoena power in this report. But we cannot say that the Committee meant that only some powers could be delegated, when it has said that "any or all" powers may be delegated, at least in the absence of a showing that an application of this construction in a particular instance would produce an absurd result.

Congressional intent to allow a delegation of the subpoena power is further emphasized by the fact that Congress fully cognizant of the Administrator's practice of delegating this power, re-enacted the statute without change. On June 29, 1943, the Administrator issued General Order 53 (8 F.R. 9037) delegating authority to Regional Administrators and District Directors to issue subpoenas which had been signed in blank by the Administrator; on May 13, 1944, he issued Revised Order 53 (9 F.R. 5191) delegating both the authority of signing and issuing subpoenas to the Regional Administrators and District Directors. On June 22, 1944, a representative of the OPA testified before a Special Congressional Committee setting forth this practice.[7] There was other testimony by representatives of the OPA before the House Committee on Banking and

---

[6] Many court decisions have authorized the delegation by the Administrator to his subordinates of powers other than the power to issue subpoenas. See Bowles v. Wheeler, 9 Cir., 1945, 152 F.2d 34, 38, 39 (delegation of authority to institute enforcement actions); Bowles v. Griffin, 5 Cir., 1945, 151 F.2d 458, 460 (delegation of power to issue regulations and orders). If other powers granted to the Administrator are delegable, then a delegation of the power to sign and issue subpoenas cannot be beyond the intention of Congress, at least in the absence of an unreasonable exercise of the power by virtue of the delegation.

[7] Hearings Before The Special Committee to Investigate Executive Agencies, 78th Cong., 2nd Sess., Part 3, pp. 2421–2438.

Currency, during the Hearings on the Extension of the Price Control Act, which pointed out the great degree of decentralization in the OPA and the necessity for permitting the exercise of broad discretion by the regional and local offices.[8] The Tenth Quarterly Report of the OPA to Congress for the period between April and June, 1944, stressed the necessity of decentralization because of the magnitude of investigations being carried on by that office.[9] Thus, it is quite clear that Congress was aware of the policy of delegation and of the necessity for such a policy when it re-enacted the statutory provisions here in question in June of 1944[10] and June of 1945.[11] That the re-enactment of a statute subsequent to an administrative interpretation constitutes weighty evidence of Congressional adoption of the administrative construction is too well settled to require citation. Furthermore, Congress could not have been oblivious to the purport of the language in § 202 for it made two amendments to that section[12] without modifying in any way subsection 202(c). We cannot agree with the District Court that the re-enactment without change of the sections here in question is not entitled to great weight because of the temporary nature of the Price Control Act. We can take judicial notice of the high degree of Congressional scrutiny toward Price Control ever since its inception. Congressional hearings on this Act were very extensive and elaborate discussions of this Act were had on the floor of each House of Congress, before its original passage and before each re-enactment.

It is impossible to conceive of anything close to an effective administration of Price Control without a power in the Administrator to delegate many of the functions of the OPA. The magnitude of the task of effective Price Control is overwhelming. In 1944, the Administrator stated to a Senate Committee that OPA controls over 8,000,000 prices and regulates, in one form or another, 3,000,000 businesses and 14,000,000 rented dwelling units, occupied by 45,000,000 people.[13] Between April and June, 1945, according to the 14th Quarterly Report of the OPA, an average of about 300 actions were instituted and 750 investigations completed per working day. The quarterly Reports of the Director of the Administrative office of the United States Courts for the second and third quarters of the fiscal year ending June 30, 1945, and the Annual Report for that fiscal year show that approximately $5/8$ of all civil suits filed in the federal courts were instituted by the OPA. These figures are illustrative of the extensive scope of the activities of the OPA. It would be impossible for the purposes of the Act to be effectuated were the Administrator barred from delegating any but the most menial and trivial tasks of administration. Congress would not have enacted the Price Control Act, nor would it have appropriated the substantial funds necessary to its operation, had it desired to limit the functions of the OPA by preventing delegation of all important administrative functions to Regional Administrators or District Directors. In addition, the nature and purpose of Price Control requires speedy action. To compel a local office to await the signing and issuance of a subpoena by the Administrator in Washington would undoubtedly constitute a serious impairment to the activities of OPA in checking black-market operations. A willful evasion of the Price Control Act might be considerably abetted if great delay in issuing a subpoena were

---

[8] Hearings on Extension of the Emergency Price Control Act Before the House Committee on Banking and Currency, 78th Cong., 2nd Sess., Vol. 1, pp. 51, 52, 84, 152, 153.

[9] House Doc. No. 761, 78th Cong., 2nd Sess., p. 62.

[10] 58 Stat. 632.

[11] 59 Stat. 306.

[12] § 105(b) of the Stabilization Extension Act of 1944, 58 Stat. 638, 50 U.S.C.A. Appendix, § 922(i), added a provision giving "any person subpoenaed" under § 202 "the right to make a record of his testimony and to be represented by counsel."

§ 105(a) of the Stabilization Extension Act of 1944 added to § 202(a) a specific authorization to the Administrator to "conduct such hearings" as he deems necessary to effectuate the enforcement of the Act.

[13] Report of Senate Committee on Banking and Currency, App., Part III, Sen. Rep.No.922, 78th Cong., 2nd Sess., p. 113.

permitted. If the OPA is to be able to cope adequately with the forces of inflation, it is imperative that it have the ability to act swiftly. We cannot believe that Congress would have established Price Control, if it did not desire to equip the administering agency with the tools necessary for a prompt and expeditious enforcement of the Act. In this sense alone, the functions of OPA are so vastly different and require such a different enforcement policy from the Fair Labor Standards Act that we cannot regard the Cudahy case as precedent for this decision.

It might be well to point out that the Supreme Court decision in the Cudahy case was handed down after Congress had enacted the Price Control Act, so that Congress cannot be deemed to have accepted that court's interpretation of the similar language in the Fair Labor Standards Act.

In Pinkus v. Porter, 155 F.2d 90, the Seventh Circuit had before it the same question presented here. That Court found that the Administrator had the authority to delegate his subpoena power on reasoning similar to that above.[14] Since the instant case was argued before us the Court of Appeals for the District of Columbia also held that the subpoena power of the Administrator was delegable, Raley v. Porter, 156 F.2d 561.

In view of its determination on the question of delegation, the District Court did not consider appellee's defense that the subpoena issued by the District Director was so broad and indefinite that it constituted a violation of the Fourth Amendment to the Constitution. The subpoena required the defendant to appear before an enforcement attorney in Concord, New Hampshire, and to bring with him the following documents: "Any and all books, records, ledgers, invoices, purchase orders, receipts, sales slips, bills of lading, waybills, and any and all other documents relating to the purchase, sale, delivery, or transfer by you of lumber from May 1, 1943, to date, and any and all tally sheets, cards, or other records pertaining to grade,

working, or other specifications showing the complete description of said lumber, and any and all records required to be kept by 3d Revised Maximum Regulation 219, 2d Revised Maximum Price Regulation 215, Maximum Price Regulation 368, and Revised Maximum Price Regulation 467, or any one of said Regulations, of the Victory Lumber Company of Londonderry, New Hampshire."

We do not believe that under all the circumstances here involved that the subpoena was so broad and indefinite as to constitute a violation of the Fourth Amendment. All the documents requested were relevant to the investigation being conducted.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

SWEENEY, J., dissents.

---

[14] This decision was handed down after the District Court, in the instant case, had rendered its judgment.