**Charles K. CHAPMAN, Appellant,**

v.

**Norman GOODMAN, Special Agent of the Bureau of Internal Revenue, Appellee.**

**No. 13904.**

United States Court of Appeals, Ninth Circuit.

Feb. 11, 1955.

Rehearing Denied April 4, 1955.

Charles K. Chapman, Long Beach, Cal., in pro. per.

Laughlin E. Waters, U. S. Atty., E. H. Mitchell, Edward R. McHale, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and McLAUGHLIN, District Judge.

CHAMBERS, Circuit Judge.

Norman Goodman, special agent of the Bureau of Internal Revenue, wants to conduct an examination of voluminous files and papers in the possession of Charles K. Chapman, a Long Beach attorney. He also desires that the attorney answer questions concerning the papers and certain transactions. All this is incident to an investigation of income tax liability of one Thomas A. Gregory, president of the Long Beach Federal Savings & Loan Association, who is a client of Chapman's.

Essentially, this case began on October 20, 1952, when Goodman (now appellee) issued an administrative summons to Chapman (now appellant) to appear before him to testify and to bring papers "relating to financial transactions between Charles K. Chapman and Thomas A. Gregory." Chapman responded to the

subpoena and appeared. He brought no papers and he refused to be sworn. His appearance consisted of "standing on his rights." He insisted that the information sought by Goodman was within the privilege ordinarily granted to lawyer and client.[1]

Temporarily stymied, Goodman filed in the United States District Court for the Southern District of California a petition for an order to compel Chapman to attend and give testimony and to produce books and records. An order was issued ex parte by a district judge on November 26, 1952, granting Goodman's petition for enforcement.

It is appropriate that certain relevant sections of the code be set forth:

26 U.S.C.A. § 3633:

"(a) To enforce summons. If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

"(b) * * *."

26 U.S.C.A. § 3800:

"The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue, both in actions at law and suits in equity, writs and orders of injunction, and of *ne exeat republica,* orders appointing receivers, and such other orders and process, and to render such judgments and decrees, granting in proper cases both legal and equitable relief together, as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."

And Rule 81(a) (3), Fed.Rules Civ. Proc. 28 U.S.C.A. provides:

"In proceedings under Title 9, U.S.C., relating to arbitration or under the Act of May 20, 1926, c. 347, § 9 (44 Stat. 585), U.S.C., Title 45, § 159, relating to boards of arbitration of railway labor disputes, these rules apply to appeals, but otherwise only to the extent that matters of procedure are not provided for in those statutes. *These rules apply (1) to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings, and (2) to appeals in such proceedings.* As amended Dec. 27, 1946 and Dec. 29, 1948, effective Oct. 20, 1949." (Amendment of December 27, 1946, italicized.)

The order of the district judge, above referred to, directed that Chapman appear before Goodman on December 11, 1952, "to give testimony in the matter of the tax liability of Thomas A. Gregory for the years 1947 to 1950, inclusive, and * * * to bring * * * all records, books, papers, or documents relating to financial transactions between Charles K. Chapman and Thomas A. Gregory."

The service of the order of November 26th provided a violent reaction on the part of lawyer Chapman.

Within two weeks he had filed in the same matter which had started *ex parte* the following:

1. Answer to agent's petition;

2. Cross-claim for injunction and declaratory relief;

1. The original summons was issued pursuant to 26 U.S.C.A. § 3614(a).

3. Motion to bring in indispensable, necessary and proper parties; and

4. Motion to quash, vacate, and annul *ex parte* order.

These pleadings of Chapman when set forth in the transcript on appeal occupy 112 printed pages. An inkling of the breadth of Chapman's counterattack may be gathered from the cross-claim's designation of cross-defendants as:

"Norman Goodman, Individually, and as Special Agent, Thomas A. Gregory, Long Beach Federal Savings and Loan Association, John Doe, 1 to 1,000 Inclusive; Jane Doe, 1 to 1,000 Inclusive; Roe and Doe, 1 to 1,000 Inclusive, Co-Partnerships; Black and Company, 1 to 1,000 Inclusive, Corporations; XYZ Associations, 1 to 1,000 Inclusive, Unincorporated Associations; Doe National Bank Associations, 1 to 1,000 Inclusive; Receiver, Conservator, Executor, Administrator, Guardian, Trustee, or Other Representatives, Does, 1 to 1,000 Inclusive; Public Official Does, 1 to 1,000 Inclusive."

The pleadings of attorney Chapman are so prolix that the court should have stricken them on the ground they were not "short and plain" or not "simple, concise and direct." Among other things they relate stories of various alleged abuses against Chapman and his clients by different government officials. If true, some of the accounts are shocking but legally irrelevant to the proposed tax inquiry of Goodman as to Gregory.

Upon various grounds set forth in motions of agent Goodman, lawyer Chapman's answer and cross-claim were stricken by the district court. All motions of Chapman were denied.

The district court on March 13, 1953, made a new order for lawyer Chapman to appear. Pertinent paragraphs thereof are as follows:

"3. That Charles K. Chapman appear before Norman Goodman, Special Agent of the Bureau of Internal Revenue at Charles K. Chapman's office at the Ocean Center Building, Long Beach, California, on the 26th day of March, 1953, at 10:30 a. m., to give testimony under oath in the matter of the tax liability of Thomas A. Gregory for the years 1947 to 1950, inclusive, and there produce all records, books, papers, or documents in his possession, custody or control relating to financial transactions between Charles K. Chapman and Thomas A. Gregory;"

"5. That if, at said hearing, any question is asked of respondent, which calls for an answer which respondent deems to violate the confidential relationship of attorney and client, the attorney may refuse to answer such question, upon those grounds, and the matter may be, in Petitioner's discretion, thereafter referred to this Court for determination of the propriety of respondent's refusal to answer."

Before proceeding further, it is well to summarize the burden of lawyer Chapman's principal contentions and his pleadings, if we can distill them. They revolve around two points. First: the papers which he seeks to hold inviolate are protected by an attorney-client privilege. Second: the revenue agent's desire to investigate the Chapman-Gregory papers is motivated by a base desire to get information for use in pending litigation against Gregory, and by a desire to harass and destroy Gregory and his company.

What has the court done? First, it would appear that the district court has decided correctly that Gregory and the United States are not necessary parties; and, *sub silentio*, that if Gregory had desired to come into the litigation he should have asked to intervene; that Chapman is a proper and sufficient party to present his client's claim of privilege, but that Chapman or others cannot in this summary proceeding try any issues of abuse of process Gregory might have, if he has any. (That is Gregory's busi-

ness.) Second, it would seem that the trial court in proceeding under Rule 81(a) (3) has decided that the primary question of privileged communications and documents will have to be met upon an item by item basis.

■ Chapman, appellant, makes a strong argument that the order of March 13, 1953, requires that he turn over to agent Goodman all of the controversial files. Chapman finds dictionary support that "produce" means "yield up" and "turn over". But the order should be read as a whole and it seems to this court that the court below in using "produce" meant "bring the documents into the presence of Goodman (i. e., stop short of inspection), let Goodman start the questioning, and if any issues of privilege as to testimony or documents arise, then bring the issues back to the trial judge and he will rule on them."

Taking this view of the order, it would seem that the district court really has not made a final order, that it is probably partially laying aside the Rules of Civil Procedure and proceeding as to Rule 81(a) (3) under "except as otherwise provided by statute or by rules of the district court or *by order of the court in the proceeding."* (Emphasis supplied.)

This court has held that an order of a district court refusing to enforce an administrative subpoena or summons is appealable. Martin, Internal Revenue Agent v. Chandis Securities Co., 9 Cir., 128 F.2d 731. Where an order enforcing appearance and disclosure of documents to an administrative agency is made by a district court, there is a division of authority on appealability. The Seventh Circuit in Jarecki, Collector v. Whetstone, 192 F.2d 121, holds such an order not appealable. The question appears to be answered in the affirmative in Brownson v. United States, 8 Cir., 32 F.2d 844; Falsone v. United States, 5 Cir., 205 F.2d 734; McDonough v. Lambert, 1 Cir., 94 F.2d 838; United States v. United Distillers Products Corporation, 2 Cir., 156 F.2d 872. An affirmative holding, however, clearly is found only in the Falsone

case relied upon by the Court of Appeals for the Second Circuit in In re Albert Lindley Lee Memorial Hospital, D.C.N.Y., 115 F.Supp. 643, 2 Cir., 209 F.2d 122, certiorari denied, Cincotta v. U. S., 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104, a case possessing distinguishing factual features of finality.

This court thinks if the order is one of such finality that it essentially terminates the summary proceedings the order should be and is appealable.

■ In the instant case, while attorney Chapman has been ordered to appear before Goodman (and if that were all, the order might be considered final) it does not look as though the court below by its order has come to final grips with the ultimate issue, and that time will arrive when it defines by appropriate order what questions Chapman must answer and what if any documents must be produced.

In this court's consideration of this case, it has found In re Albert Lindley Lee Memorial Hospital, supra, most helpful. It is to be observed parenthetically that there the doctor who was under investigation by the internal revenue agent promptly asked to intervene and was granted intervention in the agent's proceedings against the hospital, custodian of the records, in which the hospital had been ordered to disclose names of patients under care of the doctor who had been received at the hospital within a certain period.

The proceedings in In re Albert Lindley Lee Memorial Hospital, supra, after the issuance of the original *ex parte* order, appear to have followed the Federal Rules of Civil Procedure, which was within the court's option under Rule 81(a) (3). They eventuated in a definitive order that clearly outlined the limits of the agent's possible interrogation. The retained jurisdiction therein was merely ancillary. If the last order of the district court here had reached an ultimate definition of the scope of permissible examination of the witness as was attained in the order in Albert Lindley,

this court should hold the order here appealed was appealable.

Here in Chapman's case it may eventuate that preliminary examination will develop whether all or part of the mass of papers held by Chapman are entitled to privilege; or, it may develop that the only way the issue can be finally resolved is by Chapman handing the papers up to the judge of the district court for his private examination. Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893. Wigmore on Evidence, 3rd Ed., Sections 2322, 2379. Certainly disclosure is not required until Chapman has exhausted his rights in the courts. Inasmuch as we hold that when a definitive order as to what must be revealed has been made in this case, such order surely will be sufficiently comprehensive to permit an appeal herein and probably will eliminate the necessity of Chapman falling back on refusing to obey the order, "standing upon his rights", and then seeking habeas corpus. In jurisdictions where presently the latter procedure is the only remedy for the witness, the contempt is not criminal. It is difficult to imagine the occurrence of anything beyond *pro forma* detention while the necessary steps are taken to get an appellate review.

Perhaps herein the district court before proceeding further will desire to amend its last order so that it makes doubly sure Goodman understands that Chapman is not required to let Goodman see documents claimed privileged before the issue of privilege is determined by the district court. However, under this court's interpretation of the order of March 13, 1953, it would not be necessary to make such an amendment.

Appellee Goodman argues that in the nature of things the examination of records must be summary and if time is taken to litigate before examination, statutes of limitation will run. Yet herein no motion was ever made to dismiss the appeal. In the face of the peril of statutes of limitation running no motion has been made to expedite the case.

The work of this court has been made no easier by the appellant, a lawyer, undertaking to represent himself, which he has a right to do. But patently logic and emotion have wedded and produced too many words.

The appeal is dismissed.