LOCAL 174, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA and Nugent La Poma, Appellants,

v.

UNITED STATES of America, Appellee.

No. 14746.

United States Court of Appeals Ninth Circuit.

Nov. 8, 1956.

388

Bassett, Geisness & Vance, Samuel B. Bassett, Seattle, Wash., for appellants.

Charles P. Moriarty, U. S. Atty., William A. Helsell, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HEALY, POPE and JAMES ALGER FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is a proceeding to obtain discovery as to certain transactions between Local 174 and one Frank Brewster, which are claimed to be pertinent to an examination into the liability of Brewster and his wife for income tax during the years 1943 to 1953, inclusive. Since results obtained by administrative subpoena were unsatisfactory, this case was initiated in the District Court.

Frank Brewster has been for many years an employee and officer of Local 174, having acted as secretary-treasurer from 1947 through 1953 and subsequently as president. During the years 1943 to 1947, Brewster filed separate income tax returns. In 1948 he was married to Dorothy Brewster, and in the years 1948 through 1952 husband and wife filed joint income tax returns.

In January, 1954, a special agent of the Bureau of Internal Revenue was assigned to audit all such returns. A summons was issued by him to the Local and Nugent La Poma pursuant to § 7602 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7602, directing them to bring all records and books of account of the Local "which in any way refer or relate to transactions between the said Local 174 and Frank W. Brewster, Dorothy Brewster or any other person acting for Frank W. Bewster and Dorothy Brewster or either of them." At the time required in the summons, Bassett, attorney for Local 174, Nugent La Poma, alias George Cavano, secretary-treasurer, and Laurite Thayer Agapoff, bookkeeper and accountant for the Local, together with two other officials of the Local, appeared and pro-

duced what was claimed to be an abstract from the records together with certain original records of the Local. The Local, through its officials and employees, apparently claiming a right to be the judges of what was relevant to the inquiry then being made by the special agent, refused to produce any other records. No examination of individuals under oath as to materiality or relevancy of all the books in the possession of the Union was held either by the administrative agency or at the proceedings in the District Court. In any event, the results were not deemed to be in accordance with the subpoena, and thereupon on February 8, 1955, a complaint was filed in the United States District Court, alleging that the records were necessary to ascertain the correctness of the returns of Frank W. Brewster which were being examined. It was alleged there was reason to believe that certain disbursements by the Local to or for the benefit of Brewster were not reported on these returns and that, after examination of the books and records, additional taxes might be found to be owed by Brewster and his wife. This complaint was supported by an affidavit of the special agent, which showed that Brewster, during the years 1943 to 1950, had received $35,500.00 in addition to salary designated on the summary of account furnished by the Local as loans which were unsecured. Since the returns do not show any payments of interest on these returns, it is claimed that the records of the Local should be investigated. Another claim was that disbursements were made to Brewster by check for expenses in December, 1952, totalling $1,748.65, and $1,500.00 to Dorothy Brewster in November, 1952, for the purchase of an automobile. The tax returns and the financial report of the Union brought to the administrative officials do not reflect these transactions. From the salary records produced, Brewster apparently received from the Local "other comp" as follows:

| | |
|---|---|
| 1951 | $780.00 |
| 1952 | 810.00 |
| 1953 | 780.00 |

These were not reflected in the tax returns. There are other items claimed by the petition as follows: On July 10, 1953, a 1948 GMC horse van was repaired by a Seattle garage and paid for by the Local. In 1951, a Chrysler automobile was repaired by a Seattle garage and paid for by the Local. Brewster purchased a home in California, on which $4,000.00 was paid from funds of the Local. Brewster's personal bill at a club was paid for by the Local in 1952 and 1953. An affidavit shows that the records produced by the Union and the income tax returns do not reflect these transactions.

The District Court issued an order as follows:

"It is hereby ordered that the defendants shall produce for inspection and copying or photographing at Room 224, 905 Second Avenue Building, Seattle, Washington, on Wednesday, March 30, 1955, and for so long thereafter as may be necessary to afford full and complete inspection to the agents of the plaintiff, the following described books, records and papers which may now be in their possession or control for the years 1943–1953:

"(a) *Any and all* cash books.

"(b) *Any and all* day books.

"(c) *Any and all* bank deposit slips.

"(d) *Any and all* cancelled checks.

"(e) *Any and all* check stubs.

"(f) *Any and all* loan ledger cards.

"(g) *Any and all* individual payroll records.

"(h) *Any and all* retained copies of financial statements filed annually with the Secretary of Labor pursuant to the Labor Management Relations Act of 1947.

"(i) *Any and all* retained copies of tax returns or reports rendered annually to the Collector or Director of Internal Rervenue.

"(j) *Any and all* bookkeeper's work sheets used in the preparation

of the above-mentioned financial statements and tax returns." (Emphasis supplied.)

█ In order that jurisdiction of a United States court to hear and decide a particular proceeding be established, there must be a "case or controversy." In attempting to gain access to papers and documents by judicial process, the secretary or his delegate must first summon a person "having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax."[1] The purpose of this section of the statute was to confer authority upon the tax officials to summon such persons and to conduct such an inquiry. The impact of the enactment is specifically on the taxpayer and not on an independent third party such as the Local. Only through the taxpayer can the Local or its employees be summoned. Access to Local depended upon proof of the factors set up therein connecting it with the taxpayer.

█ Since such a proceeding is in the nature of a search and seizure which has constitutional overtones, especially when directed to a third person, enforcement is not placed in the hands of the executive. It is obvious that the third person has rights of his own. Here a union which has aspects of a secret order may have economic secrets or plans which it does not wish to disclose to agents of the federal government. Such a demand, to be constitutional, must constitute a reasonable exercise of the power granted. A third party is within his rights to refuse such a demand and test the matter in court.

Where the response to the administrative officials is unsatisfactory, then the federal court "shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."[2] The Internal Revenue agent, as delegate of the Secretary, is required to file a case in the federal court. In this manner, in the course of a justiciable controversy, issues are presented as to whether the demand is reasonable and within the scope of the authority granted by Congress to the executive agent and whether there is a violation of the fundamental right of a third party to privacy.

█ The burden is upon the revenue agents in the first instance at such a judicial hearing to show that the demand is reasonable under all the circumstances and to prove that the books and records which they demand are relevant or material to the tax liability of the person liable therefor and the third party is possessed of books or records which contain items relating to the business of the person liable to the tax.

"Neither the revenue agent nor the Court has authority under the statute to require the production of memoranda, books, etc., of third parties unless they have a bearing upon the return or returns under investigation.

"In Martin, Internal Revenue Agent v. Chandis Securities Co., D. C., 33 F.Supp. 478, 480, the Court, in discussing § 3614, I.R.C., said:

" 'The agents are not the sole judges as to the scope of the examination.

" 'They must satisfy the Court that what they seek may be actually needed. Otherwise, they would be assuming inquisitorial powers beyond the scope of the statute.'

"The foregoing case was affirmed by the 9th Circuit in Martin, Internal Revenue Agent, v. Chandis Securities Co., 128 F.2d 731. The sixth and ninth headnotes of the decision are as follows, respectively:

" 'The rights of an internal revenue agent to require production of papers and records for examination are statutory, and in order to obtain the relief granted by statute, he must bring himself within the terms

1. Internal Revenue Code of 1954, § 7602 (2), 26 U.S.C.A. § 7602(2).

2. Internal Revenue Code of 1954, § 7604 (a), 26 U.S.C.A. § 7604(a).

thereof. 26 U.S.C.A.Int.Rev.Code, §§ 3614(a), 3615(a), 3631, 3633.'

" 'Under statute providing that no taxpayer shall be subjected to unnecessary examination or investigation, Bureau of Internal Revenue has no power to make an unnecessary examination or investigation of the books of a third person. 26 U.S.C.A.Int.Rev.Code, § 3631.' " First National Bank of Mobile v. United States, 5 Cir., 160 F.2d 532, 534–535,[3] on petition for rehearing.

The fundamental error here affected both parties. Neither seems to have conceived that this proceeding is just another lawsuit. The tax officials assumed that all that was required upon their part was to show that they did not have sufficient data to satisfy them of the correctness of the tax returns of the Brewsters, to suggest the probability that there must be some items or papers relating thereto in the possession of the Local, and to show that possession of all of the books and documents assumed to be under control of the Local was denied them. This demand was simply that a court place the imprimatur of approval as a rubber stamp upon the administrative subpoena without further investigation. This approval would constitute the administrative enforcement officials the judges of relevance and in the meantime deprive the Local of its right of privacy.

The subpoena on its face asked for a general search of the papers and documents of the Local. There was obviously no attempt to confine the demand to items which might be relevant or material to the taxes of the Brewsters. The Union was not itself subject to this investigation. It was not here a taxpayer whose books and records were within the jurisdiction of the agency. The distinction often drawn between the rights of a corporation and an individual as to the extent of protection of privacy is not valid here.[4] The Local was in the position of a third party and consisted of an association of individuals. Of course, any of these individuals, as officers of the Local or custodians of its records, were subject to such a subpoena. But, as third parties, none was required to produce any item or document unless it was (1) in his possession, (2) relevant to the tax liability of the Brewsters or either of them, or (3) material to the inquiry.[5]

As the record before us indicates, there was a hearing on affidavits and an oral argument. It is not intended to hold that any civil case cannot be submitted in such a manner or in any other way to which the parties can agree with the consent of the trial judge. But here, because of the breadth of the demand of the administrative subpoena and the misconception of the government agents as to scope of the trial, there was no examination of the books and documents by the trial judge. The affidavits submitted were inadequate to support propositions which the agency was required to prove, such as the materiality and relevancy of any document or item specifically described to the tax liability of either of the Brewsters. It was not proved by affidavit or otherwise that Local or any individual had possession, care or custody of any books, documents or papers of any

---

3. The language of this Court in Martin v. Chandis Securities Co., 128 F.2d 731, as it appears in the body of the opinion is as follows: "The [Commissioner's] rights, if any, are statutory, and to obtain the relief granted by the statute he must bring himself within the terms thereof." At page 735. " * * * such statutes, however, authorize only a 'necessary' examination or investigation. Therefore [Commissioner] appellant has no right to make the examination or investigation here involved, and unless he

can show he has a right he is not entitled to relief." At pages 735–736.

4. Such a distinction was drawn in United States v. Morton Salt Co., 338 U.S. 632, 651–652, 70 S.Ct. 357, 94 L.Ed. 401, where, however, the defendant company was not a third party to the main inquiry, as was Local 174 here, but was itself the principal party.

5. Internal Revenue Code of 1954, § 7602, 26 U.S.C.A. § 7602.

kind containing entries relative to the business of the Brewsters. The propositions here suggested were by-passed. The government agents failed to sustain the burden upon the issues.

The defense that the private papers belonging to Local or in custody of some individual were thus subjected to unlawful search, in that many books and papers which were not pertinent to the tax inquiry of the Brewsters but were entirely private, was not passed upon. Neither Local nor any other individual was charged with a crime. Furthermore, the tax liability of neither Local nor any individual except the Brewsters was subject to examination. If it be claimed this defense was considered and adjudicated, the answer is that the final order contains no limitation designed for such protection and therefore is erroneous as matter of law.

While this Court does not attempt to dictate procedure, the trial court unquestionably had the right to subpoena the papers of Local, if they were properly designated and proved to be in its possession. By scrutiny, the pertinent, relevant and material part could have been segregated. An appropriate order could then have been made. It is not intended to intimate that the Internal Revenue Bureau would have any right to inspect any book or paper so produced until after hearing and adjudication as to the matters above suggested by the trial judge. But witnesses could have been examined as to all these points under the usual guaranty and, if necessary, inspection could have been made by the trial judge of any document brought into court for these purposes.

Although the judge was confronted with an administrative subpoena of unlimited breadth addressed to third parties to the controversy over which the Special Agent had jurisdiction, there was no discrimination in the final order. The trial court apparently assumed it could not do otherwise than to accept the determination of the Special Agent as to relevancy and materiality, and enforce the subpoena.

On the other hand, the Local was apparently under the impression that a refusal was all that was necessary. The reliance upon technicalities and its evasive conduct apparently convinced the trial court that there was an attempt to conceal. There was a strong suspicion created that there were relevant records to which the government was entitled. The conduct of the Local with respect to the accountant who was produced on the administrative summons and then had conveniently departed from its employ at the time of the trial seems to indicate an attempt at concealment.

It is often stated that the revenue agents cannot be the "sole judges as to the scope of the examination." Equally, it is obvious the third party cannot be the unquestioned arbiter of relevancy. Illustrative of the evil which would arise from such a rule is the position of the Union here where there is grave doubt whether the attempt is to guard its own privacy or to throw a veil of protection about its president. And, of course, the third party cannot set up defenses peculiar to the person liable to the tax. These are of no concern to him. However, it may be demonstrated by appropriate proof that there are items or documents in the possession of the Local or some individual of the association which had a real bearing upon the matter under investigation. It is undeniably a matter of the utmost importance that collection of the revenue be not frustrated.

These questions are not for arbitrary resolvement by either party, but are justiciable by the Court in the case here presented. Nor is the Court performing an unaccustomed function. The courts determine under the Federal Rules of Civil Procedure, 28 U.S.C.A., what testimony must be given on deposition, whether oral or by interrogatory, and what documents must be produced in response to a judicial subpoena duces tecum. A party summoned before a grand jury has the right to the ruling of the court as to what testimony may be compelled and as to what records may be required to be produced.

But, unfortunately, the final order tendered to the court and entered in the proceeding does not show that the court passed upon any of the cardinal questions. It is not found that any specific item or document is relevant to an investigation of the tax liability of the Brewsters. It is not found that any such item or document is material to the inquiry. There is no finding that any specific document or record is in possession of Local or any individual. With exceptions in the record as it stands, any such finding would be clearly erroneous.

■ There was no finding as to the defense of the right of privacy as to items or documents not relevant or material to the tax liability of the Brewsters or either of them. Unless such findings were made, it could not be concluded the demand was reasonable. The direction of the order that all of these records be turned over to the Special Agent for an unlimited time is arbitrary and unreasonable.

> "He is not entitled in this case to have the Bank produce all its records merely in order for him to go through them for the purpose of ascertaining whether or not the Bank possesses any records which may or may not be relevant to the tax returns under investigation." First National Bank of Mobile v. United States, 5 Cir., 160 F.2d 532, 534.

If the order had required production in court so that testimony could be heard and the judge could exercise an independent judgment as to what documents or entries were relevant, it might have been upheld. The judge could have also determined whether the rights of the Local to privacy were protected and whether it could not be shielded from absurd inconveniences arising from lengthy withholding of its essential records, and other possible unreasonable consequences.

■■ It is not the purpose to circumscribe the discretion of the court or attempt to lay down rigid rules of procedure.[6] It is only pointed out that the order was not the result of a hearing where judgment was exercised; there was no specification of the items and documents which were relevant and could be examined; and finally there was a blanket turnover to the government agents for an unlimited time.

Remanded for further proceedings.

POPE, Circuit Judge (dissenting).

I dissent. In my view the majority opinion indicates a misapprehension of the nature and character of this proceeding and it arrives at a conclusion which disregards all of the recent decisions both of the Supreme Court and of this court upon this subject. In United States v. Morton Salt Co., 338 U.S. 632, 642, 70 S.Ct. 357, 363, 94 L.Ed. 401, the Supreme Court frankly recognized that it had turned a corner in dealing with cases of this kind and that in adjudging of the propriety of a court order enforcing an administrative subpoena, many of the old concepts had fallen by the wayside. The Court said:

> "We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan 'no fishing expeditions'. It must not be forgotten that the administrative process and its agencies are relative newcomers in the field of law and that it has taken and will continue to take experience and trial and error to fit this process into our system of judicature. More recent views have been more tolerant of it than those which underlay many older decisions. Compare Jones v. Securities & Exchange Comm., 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015; with United

---

6. Compare with the situation reflected in Chapman v. Goodman, 9 Cir., 219 F.2d 802.

States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211.

"The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. *It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated,* or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." (Emphasis mine.)

In my view the majority have completely missed this point which is that the right to issue the subpoena and to have it enforced stems from the right of the tax officials to carry on an investigation "merely on suspicion that the law is being violated, or even just because [they] want assurance that it is not." Good evidence that the court's opinion belongs to the past is furnished by the circumstance that *its main reliance is* upon Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731, and upon First Nat. Bank of Mobile v. United States, 5 Cir., 160 F.2d 532, which itself relies on the Chandis case. (On its facts a very different case than the one now before us.)

Further demonstration of the court's error here is furnished by its apparent insistence upon treating the administrative action as though it were an adversary proceeding to which there were named parties. Proceeding along this line, they make it plain that they are treating the union as though it were some third party in no manner affected by the main case. Thus the opinion says: "The union was not itself subject to this investigation. It was not here a taxpayer whose books and records were within the jurisdiction of the agency"; and, in footnote 4, in referring to the Morton case, they say: "The defendant company was not a third party to the main inquiry, as was Local 174, here, but was itself the principal party."

It is readily demonstrable that this concept which runs through the majority opinion not only flies in the face of what was said in the Morton Salt case, supra, but fails to take account of what was said in Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494, 506, 90 L.Ed. 614, to the effect that all that is required to be demonstrated to the court in a case of this character is "that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry."

Even if the union were, as the majority mistakenly assume, in the position of a disinterested bystander, yet it is perfectly well settled that a third person may be required, in connection with administrative proceedings of this character, to produce books and records even though such person is not charged with any improper conduct, or, if it be a tax case, is not under investigation for nonpayment of taxes.

In First National Bank of Mobile v. United States 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796, the court summarily affirmed the decision in United States v. First Nat. Bank, D.C., 295 F. 142, 143, in which a bank was required to produce the registers and other books of the bank containing the accounts of certain taxpayers who were under investigation in respect to their income tax returns, and in which the court said: "This is not a question of a search and seizure of a party's books and papers, but of whether a witness who has information

as to a party's dealings may be required to testify to those facts, and produce book entries as to such entries in connection with and supporting such testimony." That case was followed by Falsone v. United States, 5 Cir., 205 F.2d 734, where the summons was addressed not to the taxpayer but to a certified public accountant. In accord are United States v. Peoples Deposit Bank & Trust Co., D.C.Ky., 112 F.Supp. 720, affirmed, 6 Cir., 212 F.2d 86; and In re Albert Lindley Lee Memorial Hospital, 2 Cir., 209 F.2d 122. § 7602 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7602, which expressly authorizes the issuance of summons to produce books, is not limited to the taxpayer but extends to "any person having possession, custody, or care of books * * * relating to the business of the person liable for tax".

It is obvious, however, that the union here is just as much the subject of investigation and potentially as liable to penalties as is its officer taxpayer. The union was the employer, and under the familiar provisions relating to the withholding of a portion of wages or salary and the payment of the amount deducted from salary, (Title 26 §§ 1621 to 1626 added to the Code in 1943), the union is in this investigation almost as deeply as Brewster himself. § 1623 makes the union liable for the payment of the tax required to be deducted. Title 26 § 145, as amended in 1944, would make the union or its officials liable for criminal penalties, and § 291 provides for civil penalties. So do §§ 147, 1625 and 1626. In short, the proceedings are just as apt to turn up claims and penalties against the union. That is only one reason why

I must protest against the use of such loose expressions to the effect that "such a proceeding is in the nature of a search and seizure which has constitutional overtones, especially when directed to a third person".[1] Here we have neither third person, in that sense, nor any "constitutional overtones." Such a reference ignores United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542.

Not only does the majority opinion overlook the presently recognized view which the Supreme Court takes of these proceedings, a view which throws into the discard the antiquated views which my brethren distill out of the language of Martin, Internal Revenue Agent v. Chandis, supra, which with other earlier decisions went down the drain after United States v. Morton Salt Co., supra, and Oklahoma Press Pub. Co. v. Walling, supra, but they overlook the special and particular facts presented by this case. No decision, whether among the old discarded opinions, or lining up with more recent decisions of the Supreme Court, is worth anything here unless it fits the facts of this case.

The circumstance which is present here is that in order to verify the taxpayer's claim of income and the union's claim that it has withheld and paid over an appropriate deduction from Brewster's compensation, the Bureau investigator was required to rule out and negative the possibility of there being book entries somewhere in the union's books making disclosure of repayments of loans and of numerous other transactions which were proper subjects of the investigation.

---

1. That the majority opinion is not really facing the facts of this case, is manifest from the numerous references to the Local as a "third party". The opinion says: "The impact of the enactment is specifically on the taxpayer and not on an independent third party such as the Local. Only through the taxpayer can the Local or its employees be summoned." Again the opinion refers to the "fundamental right of a third party to privacy." To my mind, all this is as lacking in reason as would be the assertion that when a grand jury's investigation of the conduct of a supposed thief turns up evidence that stolen property had been disposed of to a receiver who knew it was stolen, the receiver was a "third person" with rights of privacy, and that the grand jury's pursuit of information of his affairs had "constitutional overtones"!

The showing made before the district court was that Brewster, an officer of Local 174, had numerous financial dealings with the Union, indicating many transactions which were not reflected in his income tax returns. Loans of approximately $35,000 had been made by the Local to Brewster, but his returns showed no payments of interest or deductions for interest expense on such loans, and the annual financial report of the Local showed no such loans. The investigating officers found notes to the Local signed by Brewster in the name of Clearbrook Stock Farm which provided for no payment of interest, and the records available to the investigating officers indicated that these substantial so-called "loans" from the Local to Brewster were never paid. The evidence abundantly indicated probable cause for a belief that the so-called "loans" to Brewster were payments of income to him disguised as loans. Under those circumstances it was clearly the duty of the investigating officers to find out whether the loans were ever paid, and to verify their suspicions that they were never paid. In the event of an action to collect the taxes or of a proceeding for redetermination of an asserted deficiency, it would be material and relevant to furnish testimony *that the books of the Union failed to disclose, anywhere, the receipt of any repayment.* The investigative officer should be able to testify *that he had examined the books of the Local and ascertained that they disclosed no such repayments.* He cannot give this testimony without having access to the books listed in the court's order.[2] That all these books were necessary for this and other purposes indicated by the showing, was a determination of fact which was primarily and peculiarly for the determination of the trial judge. As stated in United States v. United Distillers Product Corp., 2 Cir., 156 F.2d 872, 875, "In matters so largely of administrative detail, our function should only be to correct abuses of discretion and of power by the trial judge."

The case of First National Bank of Mobile v. United States, supra, upon which the majority rely, and which in turn relied upon Martin, Internal Revenue Agent v. Chandis Securities Co., supra, one of those cases "early in the history of federal administrative tribunals" whose authority was undercut in Morton Salt Company, supra, is so different upon its facts that it cannot with propriety be cited here. The order there related to a bank which was, differing from the case here, a truly third person. As the opinion of the district court points out, it called for the production by the bank of more than 6,000,000 items covering a five year period, all commingled and relating to all of its customers. Such a case has no resemblance to this.

The record before the district court showed the existence of many other details of dealings between Brewster and the Local union which also made an inspection of the records in question necessary to a determination of Brewster's tax liability. Large sums were paid by the Local for car and transportation expenses, and the affidavits showed that the Government had cause to believe that Brewster received amounts in the form of expense allowances. Whether these were supplementary income to him could only be ascertained through an examination of the books. Brewster's wife was shown to have been paid $1500 for the purchase of an automobile. In connection with Brewster's substantial financial investments in race horses and race horse enterprises, it was shown that repair bills on a 1948 GMC horse van were paid by union check; automobile

2. One purpose for an inspection of this kind is to permit the investigative officer to ascertain the condition of the books at an early date before they can be altered to meet a later claim of deficiency. If the inspection were limited to some of these books there would be nothing to prevent an evading taxpayer or his controlled union from inserting a notation of payment or of some off-setting item in some other book. The law does not contemplate that the Government should have to take this chance.

repairs were likewise paid; payments on a home purchased by Brewster and his wife were also paid with union checks; and numerous personal bills to the Horsebreeders Club were paid in the same manner. On the whole the facts shown in the affidavits filed on behalf of the Government bristled with suggestions of irregularities and the trial judge was warranted in holding that there was probable cause to believe that further investigation of the books in question was reasonable and necessary.

As stated in United States v. Morton Salt Co., supra, the administrative agency "has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." 338 U.S. at page 642, 70 S.Ct. at page 364. All that the trial court was authorized to do was to make the same sort of determination mentioned in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, at page 509, 63 S.Ct. 339, 343, 87 L.Ed. 424: "The evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act, and it was the duty of the District Court to order its production for the Secretary's consideration."[3]

What I have said here sufficiently shows that access to the books listed in the court's order was necessary and that those books and records were relevant and material for the purpose of permitting an investigator to demonstrate, if he could, that entries such as those disclosing repayment of a loan, were missing and not to be found anywhere within the books or records of the union. No further showing of necessity and relevancy than that made here should be required. As stated in United States v. United Distillers Products Corp., supra, 156 F.2d at page 874: "Nor should it be required to prove the grounds of its belief prior to examination of the only records which provide the ultimate proof." All that need be established, as stated in the Endicott Johnson case, supra, is that the records sought are not plainly incompetent.

In McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445, it was said: "Unless such subpoenas are valid, it is impossible to see how the statutes can be enforced at all, or how any wrongdoer can be brought to book." Until the inspection of the books is ordered and has been completed it is obviously impossible finally to determine whether the material thus uncovered would be relevant or material. This problem was dealt with at length in Westside Ford v. United States, 9 Cir., 206 F.2d 627, at page 632, where we affirmed an order of the same judge. We said: " 'The standards of materiality or relevancy are far less rigid in an ex parte inquiry to determine the existence of a violation of a statute, than those applied in a trial or adversary proceedings.' " The reason for this was discussed by Mr. Justice Jackson for the Court in the Morton Salt case, supra. If the investigation produces something which the Government later undertakes to offer in evidence in a proceeding to collect the taxes, it will then be appropriate for the court to rule upon the admissibility of the offered evidence and in that connection determine its materiality and relevancy. As said in Re Albert Lindley Lee Memorial Hos-

3. Cf. Oklahoma Press Pub. Co. v. Walling, supra, 327 U.S. at page 201, 66 S.Ct. at page 501: "The very purpose of the subpoena and of the order, as of the authorized investigation, is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so."

·pital, 2 Cir., 209 F.2d 123, "'It is strictly inquisitorial, justifiable because all the facts are in the taxpayer's hands.'"

What convinces me of the majority's complete misapprehension of the scope of the proposed investigation here in-·volved is the comment, apparently by way of an aside, that "there was no examination of 'the books and documents by the trial judge", and the remark— "by scrutiny, the pertinent, relevant and material ·part could have been segregated"; and again, "Inspection could have been made by the trial judge of any document brought into court for these purposes." I respectfully suggest that none of these comments have any relation to this case where the legitimate and proper purpose of the Bureau included its preparation to make proof of a negative, namely, that nowhere in any book of the union is there any entry showing that Brewster ever repaid these loans which the Government properly suspects were not loans but disguised modes of compensation.

Do my associates suggest that these books must be brought into Judge Bowen's court and that Judge Bowen should read them all for the purpose of satisfying himself that they contained no entry showing repayment of these loans? My associates' opinion now rejects most of the principles cited by this court in Westside Ford v. United States, supra. If I were a member of the legal staff of the Bureau I would now have to conclude that Westside Ford has been overruled, and that whatever validity the principles laid down in United States v. Morton Salt, supra, Oklahoma Press Co. v. Walling, supra, United States v. White, supra, and Endicott Johnson Corp. v. Perkins, supra, may have elsewhere, they can no longer be counted upon in the Ninth Circuit. I believe that before any such thing as that is per-·mitted to happen, this case should be reargued and submitted to the court sitting en banc.

This is the second opinion to be filed in this case. The first one, in which I originally concurred, reversed mainly on the ground that the hearing in the court below was based upon proof furnished by affidavits. This reversal was ordered notwithstanding no party had objected to that method of procedure. Thereafter a petition for rehearing was filed which so clearly demonstrated that the former opinion was wrong in the respect mentioned, that it had to be withdrawn. This was because such cases as Endicott Johnson Corp. v. Perkins, supra, Oklahoma Press Co. v. Walling, supra, and Westside Ford v. United States, supra, demonstrated that hearings upon affidavits in such cases, are the almost universal rule.

I think that the present effort of the majority to reach the same result by a different route is untenable. The majority ignore the public interest which ·lies behind the statute here sought to be enforced. Cf. In re Albert Lindley Lee Memorial Hospital, supra.

There is one respect in which I think it would be appropriate to modify the trial court's order. It has placed no definite time limitation upon the ordered examination. I would agree to a modification to provide for an appropriate time limit.