**D. I. OPERATING COMPANY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17859.**

United States Court of Appeals
Ninth Circuit.

Aug. 22, 1963.

Morse & Graves, and J. A. Donnelley, Las Vegas, Nev., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, Burton Berkley, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C.; and John W. Bonner, U. S. Atty., Las Vegas, Nev., for appellee.

Before MAGRUDER, JERTBERG and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal from an order of the District Court denying the appellant's motion to quash an Internal Revenue summons, and granting the government's petition directing compliance therewith.

An Internal Revenue summons directed to Allard Roen, secretary of the D. I. Operating Company, hereinafter referred to as appellant, was served upon Mr. Roen on September 28, 1961. The summons was entitled "In the matter of the tax liability of D. I. Operating Co., Wilbur Clark's Desert Inn," and was for the fiscal years ending November 30, 1956, November 30, 1957, November 30, 1958, November 30, 1959 and November 30, 1960. The summons issued under the provisions of 26 U.S.C. § 7602, and directed Mr. Roen to appear before the

revenue agent at a fixed time and place to give testimony relating to the tax liability of appellant for the period set forth above, and to produce certain books and records hereinafter described.

Under date of October 9, 1961, Mr. Roen directed a letter to the revenue agent stating that certain of the requested documents would be available for inspection, but declining to produce the other requested documents for various reasons stated in the letter. On October 19, 1961, the cause was commenced by the filing of a petition, setting forth, *inter alia,* the above recited facts and concluding:

> "Wherefore, petitioner prays that this Court order the D. I. Operating Company, its officers, agents and employees to forthwith comply with the summons served upon them September 18 (sic), 1961."

The petition was supported by an affidavit of the revenue agent.

The appellant timely answered the petition and moved to quash the summons. The answer and motion to quash was supported by an affidavit of Mr. Roen.

On December 28, 1961, the District Court denied the motion to quash the summons, and ordered the appellant "shall have to and including the 31st day of January, 1962, to comply with the terms and conditions of the summons." Subsequently the order was amended to extend the time for compliance.

On oral argument of the cause before this Court, counsel for the government suggested a probable lack of jurisdiction of this Court to entertain an appeal for the reason that the order appealed from was not a final decision under 28 U.S.C. §§ 1291. Decision by this Court was deferred pending the order or opinion of the Supreme Court of the United States in Davis, Trustee, v. Soja, Internal Revenue Agent, C.G., 371 U.S. 810, 83 S.Ct. 45, 9 L.Ed.2d 53, reported below Application of Davis, 303 F.2d 601 (7th Cir. 1962). Certiorari was granted in that case to resolve a conflict in the circuits on the question of appealability of an or-

der of the type before us in this case. The instant cause was resubmitted to this Court for decision following per curiam opinion by the Supreme Court in the Davis case [filed June 17, 1963] vacating the judgment of the Court of Appeals for the Seventh Circuit and remanding the case to the District Court with directions to dismiss the complaint as moot.

We will first consider whether the order appealed from is a final decision under 28 U.S.C. § 1291.

A distinction is everywhere recognized between orders denying motions to quash subpoenas issued in aid of administrative proceedings, and orders of similar import with respect to subpoenas issued out of court proceedings unrelated to any administrative proceedings. The former are appealable, the latter are not. This distinction is pointed out in Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1915) wherein the Supreme Court held appealable an order compelling compliance with a subpoena issued by the Interstate Commerce Commission. In that case, Mr. Justice Holmes stated, at page 442, 35 S.Ct. at page 646:

> "There is no doubt that this appeal lies. The order is not like one made to a witness before an examiner or on the stand in the course of a proceeding *inter alios* in court. Alexander v. United States, 201 U.S. 117 [50 L.Ed. 686, 26 Sup.Ct.Rep. 356]. It is the end of a proceeding begun against the witness."

The distinction mentioned in Ellis was elaborated upon in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1939), which held that an order compelling compliance with a grand jury subpoena was not final and therefore not appealable. At page 330, 60 S.Ct. at page 543, the court stated:

> "The doctrine of finality is a phase of the distribution of authority within the judicial hierarchy. But a proceeding like that under § 12 of the Interstate Commerce Act may be

deemed self-contained, so far as the judiciary is concerned—as much so as an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience. After the court has ordered a recusant witness to testify before the Commission, there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal. The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself."

Several circuits faced with the question before us have observed the foregoing distinction and concluded that an order compelling compliance with a summons issued pursuant to 26 U.S.C. § 7602 (or the equivalent provision in the 1939 Code) is a final decision and appealable. Brownson v. United States, 32 F.2d 844 (8th Cir. 1929); Falsone v. United States, 205 F.2d 734 (5th Cir. 1953); In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2nd Cir. 1953); O'Connor v. O'Connell, 253 F.2d 365 (1st Cir. 1958); Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963). Compare Application of Colton, 291 F.2d 487 (2nd Cir. 1961) [proceeding initiated by witness by filing of motion to vacate I.R.S. summons]. In several cases appealability seems to have been assumed *sub*

*silentio*, notably, First National Bank of Mobile v. United States, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925), and Local 174, International Brotherhood of Teamsters v. United States, 240 F.2d 387 (9th Cir. 1956).

The seventh circuit has held otherwise. Jarecki v. Whetstone, 192 F.2d 121 (7th Cir. 1951); Application of Davis, supra. The circuit court held in those cases that the proceeding of the lower court which culminated in the order appealed from was one for contempt of the administrative summons. Applying the familiar appealability standard in proceedings for contempt of court orders, the seventh circuit concluded that finality would not attach until sentence for contempt had been imposed. This rationale is grounded upon the nature of the specific statutory provision involved in those cases. 26 U.S.C. § 7604(b).[1] In the Davis case, the court acknowledged the line of cases holding orders such as here involved to be appealable, but submitted that those cases

"have failed to recognize the distinction between a contempt proceeding initiated pursuant to § 7604—which is not terminated by the order directing compliance—and other types of statutory enforcement procedures in which the enforcement order is the end of the proceeding, complete in itself, and the order, if not obeyed, the basis for a contempt adjudication in a separate proceeding." 303 F.2d at 602.

We feel that determination of the finality of the order before us now can

---

1. 26 U.S.C. § 7604(b) reads as follows:
"(b) Enforcement.—Whenever any person summoned under section 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against his as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfac-

tory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

best be made by examining the order itself and the actual proceedings below upon which it is predicated. The government petitioned for an order compelling compliance with the summons. The government was granted just that, and in so many words. The government did not petition for "an attachment as for contempt," as contemplated by the language of § 7604(b). The government did petition for such a writ in both of the seventh circuit cases.

Even if a proceeding pursuant to § 7604(b) is to be characterized as one for contempt, as the government urges, it does not appear that the government instituted such a proceeding. Its petition quotes the provisions of § 7604(a), § 7604(b) and § 7402(b). Sections 7604 (a) and 7402(b) both deal with the jurisdiction of district courts. Both sections are identical in substance and form, reading as follows:

> "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

In our judgment, the government invoked the jurisdiction according to the tenor of the provision last quoted, i. e. for the purpose of compelling the attendance of the witness, the giving of testimony and the production of specified documents. The government did not invoke the jurisdiction of the court to make an adjudication of contempt, if such is the thrust of § 7604(b). The proceeding thus initiated and the order appealed from are indistinguishable from those of the Ellis case, supra. The order granted in full all the relief which was prayed for. It was the "end of the proceeding begun against the witness," as Mr. Justice Holmes put it. We therefore hold the order to be final and appealable.

Characterizing the instant case in the posture we do, we do not feel constrained to debate whether § 7604(b) contemplates a proceeding for contempt of an administrative summons, as distinct from the intendment of statutes providing for the enforcement of summonses of other administrative agencies. Accordingly, if there be a distinction we decline to comment upon whether there is a difference.

Having concluded that the trial court's order is appealable, we turn now to the merits. The summons calls for production of eight categories of documents which relate to the casino operations in appellant's business. Five categories are in dispute, appellant having no objection to producing the others. The disputed items of the summons are:

> "(2) Pit Credit Cards prepared and maintained on a daily or other basis by the supervisory personnel of the Casinos' craps, blackjack and roulette games for the entire period specified above.

> "(3) Game credit cards prepared and maintained by individual 'dealers' and 'boxmen' on the 'day,' 'swing,' and 'graveyard' shifts, respectively, for each craps, blackjack, and roulette game for the entire period specified above.

> "(4) The daily record of all debits and credits to the customer's I.O.U.'s account prepared and maintained by the casino cashiers, credit manager, or other casino supervisory personnel for the entire period specified above.

> "(5) Casino Credit Cards disclosing names and addresses of individuals, corporations, partnerships, and other legal entities with whom the casino has transacted business for the entire period specified above.

> "(6) The casino credit slips used as safekeeping slips by casino personnel for the entire period specified above."

Attached to the government's petition for a compliance order is a lengthy affidavit which describes the items mentioned in the summons. The affidavit asserts the manner in which appellant uses each item in its business, and the relevance of each item to the inquiry being conducted. Attached to the appellant's motion to quash is an affidavit in which appellant denies that it uses the disputed items in the manner described by the government and further denies their relevance.

There was no hearing in the lower court and the order denying appellant's motion to quash contained no findings of fact. Appellant, by this appeal, asks only that the cause be remanded for a hearing. The government denies the necessity for a hearing and for findings of fact on the ground that the motions and affidavits suggest no issue of material fact.

The government's affidavit discloses that it intends to meticulously reconstruct and verify the daily income statements of appellant's casino operations through the use of the items requested. The appellant's affidavit states that use of the disputed items will not accomplish that result. Appellant asserts that the government has misconceived the accounting methods utilized in appellant's business in several respects. To mention one, the government distinguishes between "cash play" and "credit play," whereas appellant makes no segregation of cash and credit play in its accounting.

Specifically, appellant states that it uses items 2 and 3 to establish a ceiling on credit to be extended to a particular customer and to record the progress of credit extension toward that ceiling. Those items are not used by appellant to determine its wins or losses, and, appellant asserts, they would not be relevant data in the process of reconstructing the appellant's win-loss picture over the period of time under investigation.

With respect to item 4, the government's affidavit asserts that the requested documents are in existence, whereas appellant's affidavit asserts that such have been destroyed.

■ There are other conflicting assertions of fact in the affidavits regarding each of the disputed items which we need not spell out. It is sufficient to quote the concluding paragraph of the government's affidavit.

"14. All the foregoing categories are items of original entry or records derived therefrom. They are not only material and relevant items for investigation but are indispensable in that each casino record dovetails with the other and the offer of cash sheets without the others is meaningless and of no value."

The "dovetailing" effect of the casino records is precisely what the government is required to prove in order to establish relevancy. Appellant's affidavit denies that the requested items have this "dovetailing" effect. The affidavits do little more than to join the issues and are inadequate to support the lower court's order.

We make no prediction of what the proof will show, and therefore do not intend to imply that the order was necessarily right or wrong, in part or in whole. It would matter little that appellant does not use the documents in question in the way the government describes if it can otherwise prove their relevancy. We believe that a hearing is called for to resolve the question of relevancy and materiality with respect to each of the items which are in dispute, and the making of findings thereon.

The order appealed from is vacated, and the cause is remanded to the District Court for further proceedings not inconsistent with the views herein expressed.